IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

ALEXIS WILKINS,

        *Plaintiff,*

v.

KYLE M. SERAPHIN,

        *Defendant.*

Case No. 1:25-cv-1375-DAE

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Jason C. Greaves, TBN 24124953
Jared J. Roberts (*pro hac vice*)
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, Virginia 22314
(703) 888-1943
Fax: (703) 888-1930
jason@binnall.com
jared@binnall.com

*Attorneys for Alexis Wilkins*

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................I

TABLE OF AUTHORITIES ................................................................. II

BACKGROUND ................................................................................... 1

STANDARD OF REVIEW ................................................................... 3

ARGUMENT ........................................................................................ 3

   I.   Defendant's request for fudicial notice is improper.......................... 3

   II.  Ms. Wilkins sufficiently pleaded a claim for defamation. ................ 5

       a.  Defendants' statements are provably false................................. 5
       b.  Defendant acted with a sufficient degree of fault. .................... 13

CONCLUSION.................................................................................... 20

CERTIFICATE OF SERVICE............................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Hays*,
   65 F.4th 736 (5th Cir. 2023) ...................................................................... 4

*Ambler v. Williamson Cnty., Texas*,
   No. 1-20-CV-1068-LY, 2021 WL 769667 (W.D. Tex. Feb. 25, 2021) ...................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 3

*Bedford v. Spassoff*,
   520 S.W.3d 901 (Tex. 2017); accord *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568,
   571 (Tex. 1998) ..................................................................................... 5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 3

*Belli v. Orlando Daily Newspapers, Inc.*,
   389 F.2d 579 (5th Cir. 1967) ...................................................................... 8

*Bentley v. Bunton*,
   94 S.W.3d 561 (Tex. 2002) ........................................................ 5, 11, 12, 16

*Brown v. Petrolite Corp.*,
   965 F.2d 38 (5th Cir. 1992) .............................................................. 17, 18

*Campos v. Alamo Cmty. Coll. Dist.*,
   No. SA-03-CA-0124-RF, 2005 WL 2402676 (W.D. Tex. Sept. 23, 2005) ............... 16

*Curtis Publishing Co. v. Butts*,
   388 U.S. 130 (1967) ......................................................................... 17, 20

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) ...................................................................... 3

*Dickson v. Lilith Fund for Reprod. Equity*,
   647 S.W.3d 410 (Tex. App. Amarillo 2021) .................................................... 6

*Favre v. Sharpe*,
   117 F.4th 342 (5th Cir. 2024) ...................................................................... 6

*Franklin v. Thompson*,
   722 So. 2d 688 (Miss. 1998) ....................................................................... 6

*French v. French,*
   385 S.W.3d 61 (Tex. App. 2012) ............................................................ 15

*Gertz v Robert Welch, Inc.,*
   680 F.2d 527 (7th Cir. 1982) ................................................................ 19

*Harte-Hanks Communs. v. Connaughton,*
   491 U.S. 657 (1989).............................................................................. 20

*Hunt v. Liberty Lobby,*
   720 F.2d 631 (11th Cir. 1983) .............................................................. 19

*Klentzman v. Brady,*
   312 S.W.3d 886 (Tex. App. 2009) .................................................... 14, 15

*Letter Carriers v. Austin,*
   418 U.S. 264 (1974)................................................................................ 7

*Levine v. CMP Publications, Inc.,*
   738 F.2d 660 (5th Cir. 1984) ................................................................ 17

*Lilith Fund for Reprod. Equity v. Dickson,*
   662 S.W.3d 355 (Tex. 2023).................................................................... 8

*Lovelace v. Software Spectrum Inc.,*
   78 F.3d 1015 (5th Cir. 1996) .................................................................. 5

*Lozano v. Baylor Univ.,*
   408 F. Supp. 3d 861 (W.D. Tex. 2019) ................................................... 3

*McDougal v. Fox News Network, LLC,*
   489 F. Supp. 3d 174 (S.D.N.Y. 2020) ................................................... 11

*Milkovich v. Lorain Journal Co.,*
   497 U.S. 1 (1990).................................................................................. 12

*Moreno v. EDCare Mgmt., Inc.,*
   243 F.R.D. 258 (W.D. Tex. 2007).............................................................. 3

*Musser v. Smith Protective Servs.,*
   723 S.W.2d 653 (Tex.1987).................................................................... 6

*New Times, Inc. v. Isaaks,*
   146 S.W.3d 144 (Tex. 2004).................................................................. 10

*Parker v. Spotify USA, Inc.,*
   569 F. Supp. 3d 519 (W.D. Tex. 2021) .................................................... 5

iii

*Petrobras America, Inc. v. Samsung Heavy Indus. Co., Ltd.*,
  9 F.4th 247 (5th Cir. 2021) ............................................................................ 4

*Pitts & Collard, L.L.P. v. Schechter*,
  369 S.W.3d 301 (Tex. App. Houston 2011) ................................................ 13

*Polk Cnty. Publ'g Co. v. Coleman*,
  668 S.W.3d 385 (Tex. App. 2021) ................................................................ 15

*Randall's Food Markets, Inc. v. Johnson*,
  891 S.W.2d 640 (Tex.1995) ........................................................................... 16

*Scheuer v. Rhodes*,
  416 U.S. 232 (1974)........................................................................................... 3

*Scripps Tex. Newspapers, L.P. v. Belalcazar*,
  99 S.W.3d 829 (Tex. App. 2003), *pet. denied*........................................... 15

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)................................................................................... 17, 19

*Trotter v. Jack Anderson Enterprises, Inc.*,
  818 F.2d 431 (5th Cir. 1987) ........................................................................ 13

*Trump Media & Tech. Grp. Corp. v. WP Co. LLC*,
  No. 8:23-cv-1535-TPB-AAS, 2025 WL 1615443 (M.D. Fla. Jun. 6, 2025).............. 19

*Turner v. KTRK Television, Inc.*,
  38 S.W.3d 103 (Tex. 2000) ......................................................................... 5, 6

*Vandenburg v. Newsweek Inc.*,
  441 F.2d 378 (5th Cir. 1971) ........................................................................ 19

*Warren v. Fed. Nat'l Mortgage Assoc.*,
  932 F.3d 378 (5th Cir. 2019) .......................................................................... 5

*WFAA–TV, Inc. v. McLemore*,
  978 S.W.2d 568 (Tex. 1998) .......................................................................... 13

*Wolston v. Reader's Digest Ass'n, Inc.*,
  443 U.S. 157 (1979)......................................................................................... 15

*Zerangue v. TSP Newspapers, Inc.*,
  814 F.2d 1066 (5th Cir. 1987) ....................................................................... 16

iv

**Other Authorities**

2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed. 2022) .... 4

ANTI-DEFAMATION LEAGUE, *One Year Later: Anti-Semitic Trends Post-10/7* (2024), https://www.adl.org/resources/report/one-year-later-antisemitic-trends-post-107 . 8

Josh Appel, *Candace Owens Is a Latter-Day Gnostic*, WALL STREET JOURNAL (Sept. 25, 2025), https://www.wsj.com/opinion/candace-owens-is-a-latter-day-gnostic-9afcac0c. ................................................................................................................ 8

**Rules**

Fed. R. Evid. 201(b)(1)–(2) ................................................................................. 4

Defendant asks this Court to ignore what he actually said about Plaintiff, Alexis Wilkins, on his podcast, pretending he was merely joking. A reasonable listener did not hear Defendant making a joke or exaggerating. Instead, Defendant asserted, as fact, that Ms. Wilkins—who is in a relationship with Kashyap Patel, the Director of the Federal Bureau of Investigation—is a former Mossad agent currently acting as a "honeypot." This was in the context of Defendant, a whistleblower and former FBI agent seeking to expose the "uncomfortable truth." The deliberate and defamatory implication is that Ms. Wilkins is actively engaged in espionage against the United States. Accordingly, Ms. Wilkins brought this case to protect her reputation and hold Defendant accountable for his malicious smear. Ms. Wilkins respectfully requests that this Court deny Defendant's motion to dismiss in its entirety.

## BACKGROUND

Ms. Wilkins is an American, born in the United States. Compl. at ¶ 7. She is a patriotic, conservative, Christian country music artist and published writer, who also works for a conservative advocacy and educational company, PragerU. She is in a long-term relationship with Kashyap "Kash" Patel, which began in January 2023. *Id.* This was widely known, and Ms. Wilkins has posted photos of herself with Dir. Patel on X as early as September 2024. *Id.* On November 30, 2024, newly re-elected President Donald J. Trump announced his intention to nominate Kash Patel as the next Director of the Federal Bureau of Investigation ("FBI"). *Id.* On February 20, 2025, the U.S. Senate confirmed Dir. Patel to that position. *Id.*

1

Defendant was formerly an FBI special agent in the Counterterrorism Division. *Id.* at ¶ 8. He is now a self-described "Podcaster," "Whistleblower," and "Recovering FBI agent," who trades on his insider knowledge of the FBI and his experience in law enforcement. *Id.* He hosts the *Kyle Seraphin Show*, which he livestreams on YouTube, Rumble, and his own website. *Id.* Defendant receives income through sponsorships for his videos, paid membership through YouTube, and soliciting donations via YouTube "Super Thanks" contributions. *Id.* at ¶ 9.

On August 22, 2025, during an episode of the *Kyle Seraphin Show*, Defendant referred to Ms. Wilkins as a "honeypot" and stated that she is a former Mossad agent. *Id.* at ¶ 10. In doing so, Defendant accused Ms. Wilkins of being a spy for a foreign government, conducting espionage to undermine our national security and/or to manipulate federal law enforcement at the highest level, and even committing treason. *Id.* at ¶ 12. These accusations are all categorically false. *Id.*

Defendant made this assertion despite having personally *met* Ms. Wilkins *with* Mr. Patel at a conservative political event roughly two years ago and was specifically aware from that encounter that Ms. Wilkins was in a relationship with Mr. Patel, who was *not* the FBI director at that time. *Id.* at ¶ 14. Ms. Wilkins is not even Jewish, much less Israeli, and has never been to Israel. *Id.* She is not now, and never has been, an agent for any intelligence agency. *Id.* The notion that her relationship with Dir. Patel is part of some plot against her country is vile and ridiculous, and Defendant knows this. *Id.*

## STANDARD OF REVIEW

On a 12(b)(6) motion to dismiss, "the Court may not go outside the pleadings but must accept all well-pleaded facts as true, viewing them most favorably to the plaintiffs." *Moreno v. EDCare Mgmt., Inc.*, 243 F.R.D. 258, 260 (W.D. Tex. 2007) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). A complaint does not need to include detailed factual allegations; instead, it must provide enough facts that, when presumed true, rise to a right to relief beyond a mere speculative level. *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 878 (W.D. Tex. 2019) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)). Accordingly, to survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Complaint here exceeds this low bar.

## ARGUMENT

### I.    Defendant's Request for Judicial Notice is Improper.

As an initial matter, Defendant's request for judicial notice is improper. Defendant attached 14 exhibits to his motion to dismiss. These include news articles, a transcript of Defendant's podcast episode that is the subject of this case, X (formerly Twitter) posts from third parties, and transcripts of Ms. Wilkins's appearances on other podcasts.

"In reviewing a motion to dismiss, we consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the

3

pleadings, and matters of which the judge may take judicial notice.'" *Allen v. Hays*, 65 F.4th 736, 742 n.3 (5th Cir. 2023) (quoting 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[2], at 12-94 (3d ed. 2022)). "Under Federal Rule of Evidence 201, a district court may take judicial notice of facts that are '(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Petrobras America, Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 255 (5th Cir. 2021) (quoting Fed. R. Evid. 201(b)(1)–(2)).

Here, Ms. Wilkins concedes that Defendant's Exhibit B, the transcript of Defendant's podcast episode that is the subject of this case, is incorporated by reference in the Complaint. The remaining Exhibits, however, are not proper material for judicial notice. These Exhibits include social media posts and news articles. Defendant presented no argument "that the accuracy of the [Exhibits] could not reasonably be questioned, nor that the facts were 'generally known within the' district court's jurisdiction." *Petrobras America, Inc.*, 9 F.4th at 255. Therefore, judicial notice of these Exhibits is improper. *See id.*; *see also Ambler v. Williamson Cnty., Texas*, No. 1-20-CV-1068-LY, 2021 WL 769667, at *4 n.8 (W.D. Tex. Feb. 25, 2021) ("Courts routinely have declined to take judicial notice of facts asserted in news reports and newspapers because they are 'not a source whose accuracy cannot be questioned.'") (citations omitted). For any Exhibit of which the Court does take judicial notice, it should be merely for its existence, and not for the truth of the contents within. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir.

1996) ("Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents.").

## II.   Ms. Wilkins sufficiently pleaded a claim for defamation.

Defamation has four elements: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Warren v. Fed. Nat'l Mortgage Assoc.*, 932 F.3d 378, 383 (5th Cir. 2019) (quoting *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017); accord *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).[1] Ms. Wilkins's Complaint provides sufficient factual contentions to meet each element and alleges verifiably false statements of the Defendant.

### a.   Defendants' statements are provably false.

To be defamatory, statements must assert an objectively verifiable assertion of fact. *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 529 (W.D. Tex. 2021). As such, a statement is either fact or opinion based on its verifiability and the entire context of the statement. *Id.* Whether a statement is false and defamatory "depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). The same is true

---

[1] Defendant does not challenge the first or fourth elements.

when determining whether a publication is actionable. *Id.* While determining whether statements are capable of being actionable is an initial question for the court, if the statements are "of ambiguous or doubtful import, the jury must determine its meaning." *Turner*, 38 S.W.3d at 114 (citing *Musser v. Smith Protective Servs.*, 723 S.W.2d 653, 655 (Tex.1987)). "[A] statement, even if phrased as an opinion, will not enjoy constitutional protection if the court concludes that its substance or gist could reasonably be interpreted as declaring or implying an assertion of fact." *Favre v. Sharpe*, 117 F.4th 342, 346 (5th Cir. 2024) (quoting *Franklin v. Thompson*, 722 So. 2d 688, 693 (Miss. 1998)). Here, Defendant made a factual assertion that is provably false.

Defendant stated in no uncertain terms that Ms. Wilkins is a "honeypot," and in the next sentence, bolstered this accusation by claiming that Ms. Wilkins is a former Mossad agent. These are outright accusations, made without qualifications, that are provably false. Minimally, the defamatory import should be determined by a trier of fact.

Defendant attempts to deflect by claiming that his statements are somehow satire and hyperbole. Dkt. No. 21 at 16–17. Texas law defines hyperbolic statements as "statements which may be verifiable as false but their entire context nevertheless reveals them to be merely opinions masquerading as fact." *Dickson v. Lilith Fund for Reprod. Equity*, 647 S.W.3d 410, 414 (Tex. App. Amarillo 2021) (citations omitted). The types of hyperbole that courts have held to be protected under the First Amendment are consistently exaggerations rather than total fabrications. *See, e.g.,*

*Letter Carriers v. Austin*, 418 U.S. 264, 282–83 (1974) (holding that exaggerated, inflammatory terms such as "scab" and "traitor" are not defamatory).

When looking at the context of Defendant's statements, Defendant's argument defies logic. Defendant began his podcast describing himself as a "real whistleblower" and former FBI agent who presents the "uncomfortable truth" during his podcast. Dkt. No. 10.2 at 1. The introduction to the podcast also begins with a voiceover that says, "this program has no time for comforting lies." Compl. at ¶ 13. Defendant then moved on to discuss the current structure of the FBI, offering his insight as a former FBI agent. Dkt. No. 10.2 at 2–4. Defendant then segued into discussing an alleged FBI honeypot agent spying on the Trump campaign, and Defendant's apparent displeasure with the FBI's response to that. *Id.* at 4–6. Defendant provided his definition of the word honeypot as "the idea that you'd have a pretty woman infiltrate as an undercover," and then stated, "kind of like what [Dir. Patel's] girlfriend does." *Id.* at 5.

In the context of questioning Dir. Patel's response to the alleged honeypot situation, Defendant then asserted that Dir. Patel has had "his own little honeypot issue that's been going on of late," referring to Ms. Wilkins. *Id.* at 6. Defendant then stated, "we're just going to acknowledge it real publicly," and began discussing some of Ms. Wilkins's background information. *Id.* In doing so, Defendant falsely stated that Ms. Wilkins is "a former Mossad agent in what is like the equivalent of their NSA." *Id.* To drive home this false assertion, that Ms. Wilkins is a foreign agent who is undercover and is infiltrating Dir. Patel, Defendant explicitly called into question

7

Ms. Wilkins's motives for being in a relationship with Dir. Patel. *Id.* And, as if any question remained, Defendant continued, questioning whether Dir. Patel's own apparent honeypot situation played any role in his decision-making as the leader of the FBI. *Id.*

In the face of all of this, a reasonable viewer could certainly find that Defendant was asserting, as fact, that Ms. Wilkins is a "honeypot," manipulating the FBI Director on behalf of Israel. Defendant cites to *Dickson*, to highlight that a reasonable person "is aware of relevant contemporary events" and "temporal context." Dkt. No. 10 at 16 (citing *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363, 368 (Tex. 2023)). Contemporary events certainly do not help Defendant here. Israel has long been a scapegoat and bogeyman for the world's ills, and the recent public relations backlash against it for the war in Gaza has led to a proliferation of anti-Israel sentiment.[2] Influential podcaster Candace Owens has even accused the Mossad and Israel of being responsible for the assassination of Charlie Kirk.[3] Defendant himself sought to expose the "uncomfortable truth" in the episode and promote the idea that Ms. Wilkins has compromised Dir. Patel on behalf of Israel. Defendant did not exaggerate anything; he asserted these things as fact. Minimally, there are two competing reasonable interpretations, making this an issue for a jury. *See Belli v.*

---

[2] *See* ANTI-DEFAMATION LEAGUE, *One Year Later: Anti-Semitic Trends Post-10/7* (2024), https://www.adl.org/resources/report/one-year-later-antisemitic-trends-post-107.

[3] Josh Appel, *Candace Owens Is a Latter-Day Gnostic*, WALL STREET JOURNAL (Sept. 25, 2025), https://www.wsj.com/opinion/candace-owens-is-a-latter-day-gnostic-9afcac0c.

*Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 584 (5th Cir. 1967) ("The defendants make a case—just barely—for the view that the article is capable of being reasonably interpreted as non-defamatory. But since the article on its face is also capable of carrying a defamatory meaning, it is for the jury to decide whether the words were in fact so understood.").

Defendant argues that a reasonable listener would recognize that Defendant was merely discussing that Ms. Wilkins may have ulterior motives for her relationship, and that he simply used "over-the-top representations." Dkt. No. 10 at 16. This ignores the context of the statements. While Defendant was discussing an ulterior motive, he discussed a very specific ulterior motive: that Ms. Wilkins is a honeypot, attempting to infiltrate Dir. Patel. This is the only reasonable interpretation considering Defendant's discussion on so-called honeypot situations, and then falsely stating that Ms. Wilkins is a former Mossad agent. Furthermore, as Defendant has asked the Court to take notice, others have likewise asserted that Ms. Wilkins is a "honeypot." The fact that others have told this lie does not excuse Defendant. A reasonable listener would view Defendant as lending credence to that lie, rather than merely reiterating it hyperbolically.

And while Defendant argues that Ms. Wilkins herself has "joked" about these assertions, that does not change the analysis on motion to dismiss. First, as discussed above, Ms. Wilkins's outside statements, even if they are considered, can only be noticed for their existence. Second, Ms. Wilkins's attempt to minimize the harm to her reputation, caused by persons such as Defendant, does not absolve Defendant

from defaming her, and does not give him or anyone else license to spread that lie further. Instead, it shows quite the opposite, in that Ms. Wilkins has needed to defend her reputation from these lies.

Lastly, Defendant attempts to analogize two cases, each of which are readily distinguishable. In *New Times, Inc. v. Isaaks*, after Denton County arrested a seventh grader for writing a Halloween-themed class paper discussing a school shooting, which gained national attention, the plaintiff mocked the arrest, writing an entirely satirical and fake story about the County arresting a six-year-old for "cannibalism, fanaticism, and disorderly conduct." 146 S.W.3d 144, 147–48 (Tex. 2004). The story created a series of fake facts and attributed fake quotes to County officials. *Id.* It was evident that the entire story was satire. The plaintiff changed the facts of the case, which were nationally known and reported on, to make them more ridiculous—charging a six-year-old for cannibalism. Coupled with the fact that the plaintiff published "semi-regular" satire pieces, "a reasonable reader could only conclude that the article was satirical. *Id.* at 161.

That is obviously different from the facts of this case, where listeners rely on Defendant's self-promoted experience as a former FBI agent and whistleblower to present the uncomfortable truth. Defendant provided no indication that his statements were anything but assertions of fact, no matter how many times he describes himself in his opposition as "sarcastic" or "tongue in cheek." Indeed, the attempt by Defendant to downplay his statements as being so inherently "ludicrous" that they *must* have been a joke, is too clever by half. First, it conflates one of the

elements for establishing reckless disregard for the truth with the test for defamatory meaning. *See Bently v. Bunton*, 94 S.W.3d at 596 ("[I]nherently improbable assertions and statements made on information that is obviously dubious may show actual malice."). Outside of obvious satire—as in *Isaaks*—saying something outrageously false about someone is not a defense against defamatory meaning. Second, Defendant was not talking to an audience that had any reason to know that his statement was false. An objective, average viewer is not familiar with Ms. Wilkins's heritage or upbringing, and therefore they would not understand Defendant as being satirical or sarcastic.

In another distinguishable case, *McDougal v. Fox News Network, LLC*, the defendant, in the midst of a debate, discussed a hypothetical situation and then noted that, in that situation, the plaintiff's conduct "*sounds like* a classic case of extortion."489 F. Supp. 3d 174, 183–84 (S.D.N.Y. 2020). Considering the debate setting, the qualifiers used, and the litany of cases suggesting that words such as extortion or blackmail are regularly considered hyperbole, the court found the defendant's speech was protected. *Id.* In this case, however, Defendant was not engaged in any debate. He was having a conversation with a fellow former FBI agent about the current climate and structure of the FBI. Defendant then asserted as fact, in the context of a discussion on honeypots, that Dir. Patel had his own "honeypot issue" with Ms. Wilkins. Defendant also asserted as fact that Ms. Wilkins is a former Mossad agent. Given this context, a reasonable person would find Defendant's statements to be truthful.

11

Instead, this case is closer to *Bently v. Bunton*. In *Bentley*, the Texas Supreme Court found that the term 'corrupt'—as used by the defendant to describe a judge—was not opinion because the defendant intended the word's ordinary meaning—dishonest, unethical, shady, and unscrupulous—and this is what any reasonable viewer would have understood. *Bentley*, 94 S.W.3d at 581. The court noted that while the word 'corrupt' can be merely epithetic in the context of amorphous criticism, it can also be used as a statement of fact that can be proved true or false, similar to the word 'liar' as applied in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). *Id.* at 581–82. Because the defendant presented his statements as factual assertions, supported by evidence that he insisted was true, the court rejected the defendant's argument that his accusations of corruption were constitutionally protected opinions. *Id.* at 583–85. The import of the defendant's statements "was that [the plaintiff] was corrupt as a matter of verifiable fact." *Id.* at 585.

The same applies here. The import of Defendant's statements is that Ms. Wilkins is a honeypot and a former Mossad agent. Defendant's meaning cannot be mistaken, as he explicitly questioned the motivations for Ms. Wilkins to date Dir. Patel. Any reasonable listener would recognize Defendant's statements as assertions of fact, particularly when he starts his podcast with, "this program has no time for comforting lies," and presents the "uncomfortable truth." Considering this backdrop, there is no reason to think that Defendant intended anything but exposing the truth. Accordingly, Defendant's statements are actionable and verifiably false. This Court should deny Defendant's motion.

### b.   Defendant acted with a sufficient degree of fault.

#### 1.   *Ms. Wilkins is not a public figure.*

At the motion to dismiss stage, it cannot be determined whether Ms. Wilkins is a general or limited-purpose public figure. Therefore, Ms. Wilkins need not prove actual malice at this stage. Regardless, she does not meet the standard for general or limited purpose public figure status.

"[D]efining a public figure has been likened to trying to nail a jellyfish to the wall." *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 433 (5th Cir. 1987). Most Fifth Circuit jurisprudence on public figures dates from the 1970s and 1980s, decades before the advent of social media, and courts have increasingly recognized the limitations of the limited-public figure doctrine.

General-purpose public figures are persons "who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts." *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 326 (Tex. App. Houston 2011) (quoting *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). The fact that Ms. Wilkins is a singer and author certainly do not confer general public status, as much as many aspiring artists might wish that to be so. Similarly, referring to oneself as a "public figure" does not make it so in the legal sense—particularly when the comment is made to downplay vile allegations made by people like Defendant.

Ms. Wilkins is also not a limited public figure because there is no public controversy about her background or upbringing. "It is not enough that a plaintiff is involved or associated with a matter of public or general interest, no matter how

significant or sensational. 'A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention' or is newsworthy." *Klentzman v. Brady*, 312 S.W.3d 886, 904 (Tex. App. 2009) (quoting *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167 (1979)) (internal citations omitted). Somone does not become a public figure merely because they are repeatedly discussed by a media defendant or because their actions become a matter of controversy as a result of that media coverage. *Id.* at 905 (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979)). Instead, "a defamation defendant must show that the plaintiff 'relinquished his interest in the protection of his own name' by 'engaging the attention of the public in an attempt to influence the resolution' of 'an issue of public concern.'" *Id.* (quoting *Wolston*, 443 U.S. at 168) (cleaned up).

Here, Ms. Wilkins does not become a public figure simply by her association with Dir. Patel. Her attempts to defend herself from defamation do not relinquish her interest in the protection of her own name. Defendant deceptively attempts to define the controversy as being Ms. Wilkins's relationship with Dir. Patel. By his own pleading, however, Defendant claims to have made his statements about Ms. Wilkins in the context of criticizing Dir. Patel's leadership at the FBI. Dkt. No. 10 at 10–12. This is, undoubtedly, an issue of public concern, but it is not an issue that involves Ms. Wilkins in anything but a tangential fashion. Ms. Wilkins is not part of the FBI and has not attempted to influence any public controversy regarding the FBI. Thus, she cannot be a limited-purpose public figure on this topic. *See Klentzman*, 312

14

S.W.3d at 904 (quoting *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 168 (1979)). Accordingly, Ms. Wilkins is only required to show that Defendant acted negligently.

### 2. *Defendant acted negligently.*

As a private individual, the requisite degree of fault in this case is negligence. This requires a showing that the defendant knew or *should have known* that their statements were false. *French v. French*, 385 S.W.3d 61, 73 (Tex. App. 2012). "Negligent conduct is determined by asking 'whether the defendant acted reasonably in checking the truth or falsity or defamatory character of the communication before publishing it.'" *Polk Cnty. Publ'g Co. v. Coleman*, 668 S.W.3d 385, 398 (Tex. App. 2021) (quoting *Scripps Tex. Newspapers, L.P. v. Belalcazar*, 99 S.W.3d 829, 837 (Tex. App. 2003), *pet. denied*).

Here, at the very least, Defendant acted negligently when he claimed that Ms. Wilkins is a honeypot and former Mossad agent. Notably, at no point in Defendant's motion does he argue that he was not negligent. Instead, Defendant solely focuses on actual malice. As pleaded, Ms. Wilkins has been in a relationship with Dir. Patel before he became Director of the FBI, and Defendant himself met Ms. Wilkins at an event during that period. Compl. at ¶ 7, 14.[4] Defendant simply had no basis for his lies. Compl. at ¶ 14. And Ms. Wilkins publicly denied that she had any affiliation with Israel before Defendant even made his statements—a fact of which Defendant is

---

[4] While Defendant claims he has never met Ms. Wilkins, Dkt. No. 10 at 3 n.1, that assertion is not entitled to any deference at this stage.

aware, particularly considering his requests for judicial notice in this matter. *Id.* at ¶ 23. Thus, Defendant should have known that his statements about Ms. Wilkins were false. Accordingly, Ms. Wilkins has sufficiently pled Defendant's negligence.

### 3. *Regardless, Defendant acted with actual malice.*

Even if the Court finds that Ms. Wilkins is a public figure in some capacity, Defendant's motion still fails because Ms. Wilkins plausibly alleges that Defendant acted with actual malice. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint by a public figure must adequately allege that Defendant made his defamatory statements with "actual malice." *New York Times Co. v. Sullivan,* 376 U.S. 254, 283 (1964). "[A] statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth." *Campos v. Alamo Cmty. Coll. Dist.*, No. SA-03-CA-0124-RF, 2005 WL 2402676, at *2 (W.D. Tex. Sept. 23, 2005) (quoting *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex. 1995)). Often, the only way to prove actual malice is through circumstantial evidence. *Bentley*, 94 S.W.3d at 596. While "lack of care or an injurious motive in making a statement is not alone proof of actual malice," they "are factors to be considered." *Id.*

The actual malice requirement can be satisfied "when a defendant fail[s] to investigate a story weakened by inherent improbability, internal inconsistency, or apparently reliable contrary information." *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987) (citing *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967); *McHale v. Lake Charles American Press*, 390 So.2d 556, 566 (La. App. 3d Cir.

1980), *cert. denied*, 452 U.S. 941 (1981)). For example, in *Levine v. CMP Publications, Inc.*, the Fifth Circuit held that a newspaper author who mischaracterized a civil suit as a criminal proceeding in which a judgment had been rendered had acted knowingly or recklessly. 738 F.2d 660, 675 (5th Cir. 1984). Similarly, in *Brown v. Petrolite Corp.*, an oil company published a report that purported to show negative effects from a competitor's product without first verifying that the products used in the testing were actually the ones sold by the competitor. 965 F.2d 38, 48 (5th Cir. 1992). The Fifth Circuit held that this failure was actual malice by the defendant "not because it failed to investigate but because despite knowledge of the limitations of its investigation and of reliable, contrary information it published false statements." *Id.*

Ms. Wilkins properly showed in her Complaint that Defendant knew his claims about him were false or, at the very least, acted recklessly in making the subject statements. Dkt. No. 1 at ¶ 32. As an initial matter, Defendant entirely fabricated that Ms. Wilkins is a honeypot and former Mossad agent. As the Supreme Court has noted, "[p]rofessions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Here, there was simply no basis to assert that Ms. Wilkins is a honeypot or a former Mossad agent. Instead, Defendant fabricated it entirely.

Furthermore, Defendant actually met Ms. Wilkins with Mr. Patel and therefore knew that she is American and not Israeli, and that they were in a relationship *before* Patel became Director of the FBI; before President Trump was

even re-elected. *See* Compl. at ¶¶ 14, 23. And as Defendant asks the Court to notice, Ms. Wilkins very publicly stated prior to Defendant's statements that the allegations regarding her affiliation with Israel are false. *Id.* Thus, Defendant had actual knowledge that Ms. Wilkins was not a former Mossad agent honeypot, working to infiltrate Dir. Patel. Minimally, Defendant acted with reckless disregard for the truth in failing to investigate his statements in light of reliable, contrary information. *See Brown*, 965 F.2d at 48.

Additional circumstantial evidence likewise illustrates Defendant's actual malice. First, Defendant had motive to lie about Ms. Wilkins to self-promote his notoriety and profit. Compl. at ¶ 21. Second, Defendant projected his own racial animus against Dir. Patel, and against Ms. Wilkins for being in a relationship with Dir. Patel, making the bigoted suggestion that Ms. Wilkins would not engage in her interracial relationship with "a cross-eyed . . . kind of thickish built super cool bro who's almost 50 years old . . . Indian in America" like Dir. Patel, if not for the ulterior motive of being a "honeypot" for Israel. *Id.* Accordingly, considering the combination of this evidence, Ms. Wilkins has met her burden at the pleading stage by creating a reasonable inference that Defendant made his false statements with knowledge that they were false or with reckless disregard for falsity. *See Bentley*, 94 S.W.3d at 596.

Defendant's argument essentially boils down to claiming that he didn't act with actual malice because other people had also lied about Ms. Wilkins, and she 'joked' about the allegations. First, there is simply no record evidence that Defendant relied on any other sources when making his lies. Therefore, Defendant cannot claim

18

reliance at this stage. *See Trump Media & Tech. Grp. Corp. v. WP Co. LLC*, Case No. 8:23-cv-1535-TPB-AAS, 2025 WL 1615443, at *3 (M.D. Fla. Jun. 6, 2025) (holding on motion to dismiss that the defendant could not rely on a source that it did not attribute its statement to in the subject publication).

Even if the Court were to consider outside sources, the only persons that were making these assertions and questioning Ms. Wilkins's allegiance, were internet trolls whose reliability is inherently questionable. In *Hunt v. Liberty Lobby*, the defendant relied on a source that was directly at odds with the plaintiff. 720 F.2d 631, 645 (11th Cir. 1983). There were "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Id.* (quoting *St. Amant*, 390 U.S. at 732). Thus, it remained a question for the jury as to whether the defendant satisfactorily followed up on the doubts they had about the source. *Id.* This was coupled with the fact that the news story was not "hot." *Id.* "When a story is not 'hot news,' 'actual malice may be inferred when the investigation . . . was grossly inadequate in the circumstances.'" *Id.* (quoting *Vandenburg v. Newsweek Inc.*, 441 F.2d 378, 380 (5th Cir. 1971)). A defendant cannot "feign ignorance" in such situations. *Hunt*, 720 F.2d at 644 (quoting *Gertz v Robert Welch, Inc.*, 680 F.2d 527, 538 (7th Cir. 1982)).

Like *Hunt*, Defendant's sources are directly at odds with Ms. Wilkins for largely the same reasons Defendant is. Also, like *Hunt*, the news story here was not "hot" news. Still, Defendant relied on his troubled sources without conducting any sort of investigation, despite having time to do so. Simply put, Defendant avoided and willfully disregarded the truth. And while "failure to investigate will not alone

19

support a finding of actual malice," "purposeful avoidance of the truth is in a different category." *Harte-Hanks Communs. v. Connaughton*, 491 U.S. 657, 692 (1989) (quoting *St. Amant*, 390 U.S. at 731–33). When coupled with Ms. Wilkins's public denial of the allegations, along with the fact that Defendant had met Ms. Wilkins years ago, any person in such a scenario would have harbored doubts. Defendant, however, because of his intent to harm Ms. Wilkins, avoided the truth.

And as to Ms. Wilkins 'joking' about the allegations, Defendant asks the Court to make an improper inference. Additionally, as discussed above, Ms. Wilkins's need to clear her reputation is evidence that she *was,* and *is,* being defamed; not that the allegations were somehow laughing matters. Accordingly, Ms. Wilkins has met her burden.

## CONCLUSION

While defamation law has evolved over time, "the basic theory of libel has not changed." *See Curtis Publishing Co.*, 388 U.S. at 151–52. "[W]ords defamatory of another are still placed in the same class with the use of explosives or the keeping of dangerous animals." *Id.* (internal quotation omitted). Accordingly, while Defendant is entitled to critique anyone, including Ms. Wilkins, he is not entitled to lie about her. There was no excuse for Defendant to accuse her of being a spy. Viewing the facts in the Complaint as true and in the light most favorable to Ms. Wilkins, Defendant's motion should be denied. In the alternative, if this Court were to believe that any aspect of Ms. Wilkins's claims are lacking, Ms. Wilkins would request leave to amend her Complaint to more fully articulate her claims.

Dated: November 25, 2025                    Respectfully submitted,

                                            */s/ Jason C. Greaves*
                                            Jason C. Greaves, TBN 24124953
                                            Jared J. Roberts (*pro hac vice*)
                                            BINNALL LAW GROUP
                                            717 King Street, Suite 200
                                            Alexandria, Virginia 22314
                                            (703) 888-1943
                                            Fax: (703) 888-1930
                                            jason@binnall.com
                                            jared@binnall.com

                                            *Counsel for Plaintiff Alexis Wilkins*

## CERTIFICATE OF SERVICE

I certify that on November 25, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jason C. Greaves*
Jason C. Greaves