UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ALEXIS WILKINS,                         §     No.  1:25-CV-1375
                                        §
        *Plaintiff*,                    §
                                        §
                                        §
vs.                                     §
                                        §
                                        §
KYLE M. SERAPHIN                        §
                                        §
        *Defendant*.                    §
                                        §
_____             §

ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Kyle M. Seraphin's ("Defendant" or

"Seraphin") Motion to Dismiss Plaintiff's Original Complaint ("Motion to

Dismiss").  (Dkt. # 10.)  Pursuant to Local Rule CV-7(h), the Court finds this

matter suitable for disposition without a hearing.  After careful consideration of the

relevant law and the memoranda in support of and in opposition to the motion, the

Court, for the reasons that follow, **DENIES** Defendant's Motion to Dismiss.

BACKGROUND

This case arises from allegedly defamatory statements made by

Defendant Kyle M. Seraphin on his podcast show, the Kyle Seraphin Show, about

Plaintiff Alexis Wilkins ("Plaintiff" or "Wilkins").  (Dkt. # 1.)  In her suit, Plaintiff

alleges a single count of defamation and defamation per se against Defendant. (Id.)

Plaintiff Alexis Wilkins "is a patriotic, conservative, Christian, country music artist and published writer, who also works for a conservative advocacy and educational company, PragerU." (Id. at ¶ 7.)  Since January 2023, Plaintiff has been in a long-term relationship with Kashyap "Kash" Patel, the Director of the Federal Bureau of Investigations ("FBI").  (Id.)  Defendant Kyle M. Seraphin is a U.S. Air Force veteran and former FBI special agent in the FBI's Counterterrorism Division.[1]  (Id. at ¶ 8; Dkt. # 10 at 2–3)  A self-proclaimed "Podcaster," "Whistleblower," and "Recovering FBI agent," Defendant hosts the Kyle Seraphin Show, during which he "trades on his insider knowledge of the FBI and his experience in law enforcement" to tell his audience the "uncomfortable truth."  (Dkt. # 1 at ¶¶ 8, 13.)  The show, which is livestreamed on YouTube, "Rumble," and Defendant's website, garners wide reach.  (Id. at ¶ 8.)  According to Plaintiff's Complaint, Defendant has over 271,800 followers on X, and his posts frequently reach tens of thousands of views and numerous re-posts.  (Id.)  Plaintiff also alleges that Defendant receives income through his video sponsorships, paid membership through YouTube, and donations through YouTube.  (Id. at ¶ 9.)

---

[1] Plaintiff's Complaint states Defendant was in the Counterterrorism Division (Dkts. ## 1 at ¶ 8; 13 at 8), but Defendant states that he was actually in the Counterintelligence Division, (Dkt. # 10 at 3 n.1).

2

On August 22, 2025, Defendant stated the following on the Kyle Seraphin Show:

> [FBI Director Kash Patel] has had his own little 'honeypot' issue that's been going on of late, so we're just going to acknowledge it real publicly. He's got a girlfriend that is half his age, who is apparently is both a country music singer, a political commentator on Rumble, a friend of John Rich through Bongino, who also now owns a big chunk of Rumble, and she's also a former Mossad agent in what is like the equivalent of their NSA. But I'm sure that's totally because, like, she's really looking for like a cross-eyed, you know, kind of thickish built, super cool bro who's almost 50 years old who's Indian in America. Like it has nothing to do with the fact that uh we're really close to the Trump administration. Anyway, I'm sure that's totally just like love. That's what real love looks like.[2]

(Id. at ¶ 10.)

Plaintiff alleges that, in making this statement, Defendant falsely and maliciously characterized her as a "honeypot"—which she defines as an agent of a foreign government who began a relationship with another for purposes of manipulating and compromising them—and accused her of "conduct[ing] espionage to undermine [] national security" and "committing treason." (Id. at ¶¶ 1, 12.)  The Complaint insists that this statement was not mere rhetorical hyperbole or satire, and no reasonable viewer of Defendant's program could view his accusation as anything besides sincere, in part because of Defendant's position as "a counterterrorism law enforcement officer, a former special agent of the FBI, and a

---

[2] In his Motion to Dismiss, Defendant's version of the statement is materially the same, with some negligible deviations in punctuation.  (See Dkt. # 10 at 12.)

teller of 'uncomfortable truth.'" (Id. at ¶ 13.)  Instead, Plaintiff maintains that Defendant knowingly, with reckless disregard for the truth, or at best negligently, "fabricated this accusation" and published his defamatory statement across numerous online outlets to generate greater outrage among his viewers and increase his profits.  (Id. at ¶¶ 15, 21.)  According to the Complaint, Defendant's malicious intent to smear Plaintiff's reputation is evidenced in his desire to spread this lie "real publicly."  (Id.)

On August 27, 2025, Plaintiff filed suit in this Court.  (Dkt. #1.) Defendant filed a motion to dismiss on November 4, 2025.  (Dkt. # 10.)  On November 25, 2025, Plaintiff filed a response in opposition, (Dkt. # 13), and Defendant subsequently filed a reply, (Dkt. # 14).  On February 5, 2026, Plaintiff filed a notice of supplemental authority of another ongoing defamation case Plaintiff brought in the Southern District of Florida against a separate defendant.[3] (Dkts. # 15, 15-1.)  Defendant subsequently filed his own notice of supplemental authority of a defamation case in the Southern District of Texas between different parties.  (Dkts. ## 16; 16-1.)[4]

---

[3] In this case, Wilkins v. Schaffer, No. 9:25-cv-81334-DMM (S.D. Fla Feb. 4, 2026), the court denied the defendant's motion to dismiss Wilkins' defamation claim, which was founded on similar allegations of the defendant spreading the narrative that Plaintiff is "an Israeli Mossad agent spy, or 'honeypot.'"  (Dkt. # 15-1 at 1.)

[4] In this case, Patel v. Figliuzzi, No. 4:25-cv-02548, Dkt. No. 38 (S.D. Tex. Apr. 21, 2026), the court granted a motion to dismiss a defamation claim brought by

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

Director Patel against Cesare Frank Figliuzzi, Jr., a claim that was based on a statement the defendant made on the MSNBC Show Morning Joe.  (Dkts. ## 16; 16-1.)

5

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

6

DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that, on the face of the Complaint, the statements do not constitute defamation.  (Dkt. # 10.)[5]  Under Texas law, defamation requires: (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) with a requisite degree of fault; and (4) damages, unless the defamatory statements are defamatory per se. In re Lipsky, 460 S.W.3d 579, 593 (Tex. 2015) (citing WFAA–TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex.1998) and Waste Mgmt. of Texas, Inc. v.

---

[5] In his Motion to Dismiss, Defendant asks the Court to take judicial notice of 15 exhibits attached to his motion.  (See Dkt. # 10 at 6 n.2.)  In a 12(b)(6) motion, a court considers only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters appropriate for a judge to take judicial notice.  Allen v. Hays, 65 F.4th 736, 742 n.3 (5th Cir. 2023). Exhibits attached to the motion to dismiss may be considered if the exhibit was referred to in the complaint and central to the plaintiff's claims, such as the allegedly defamatory publication itself.  In re Katrina, 495 F.3d at 205; see, e.g., Parker v. Spotify USA, Inc., 569 F. Supp. 3d 519, 528 (W.D. Tex. 2021).  Because Plaintiff's Complaint repeatedly references Defendant's show, and that show is central to her claims, the Court will consider the transcript of Defendant's episode that is the subject of this case, Defendant's Exhibit B (Dkt. # 10-2).  However, the Court declines to consider or take judicial notice of Defendant's other exhibits, which include general news articles describing FBI investigations, social media posts about the Plaintiff and Director Patel that were not generated by the Defendant, and transcripts for other podcasts that involved Plaintiff.  See ContourMed Inc. v. Am. Breast Care L.P., No. CV H-15-2769, 2016 WL 1059531, at *2 (S.D. Tex. Mar. 17, 2016) ("[J]udicial notice of matters of public record is limited to materials like general historical observations, court orders, administrative publications, and dictionary definitions.").

Texas Disposal Sys. Landfill, Inc., 434 S.W.3d 142, 146 n.7 (Tex. 2014)).  For a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable.  Milkovich v. Lorain Journal Co., 497 U.S. 1, 19 (1990); Bentley v. Bunton, 94 S.W.3d 561, 580 (Tex. 2002).

Defendant seeks to dismiss Plaintiff's defamation claim because, according to Defendant, Plaintiff cannot establish that the statements at issue were defamatory, nor can she establish that Defendant acted with the requisite degree of fault.  (Dkt. # 10 at 1, 14.)  The Court will address each of Defendant's arguments in turn.

I.      Defamatory Statement

First, Defendant asserts that his "sarcastic, humorous, and hyperbolic statements" that Plaintiff is a "honeypot" and "former Mossad agent" are not defamatory as a matter of law.  (Dkt. # 10 at 14.)  Because these "tongue-in-cheek" comments were given "in the context of a political podcast," a reasonable listener would understand that these "purposefully over-the-top representations" were not assertions of fact, but rather "an effort to make news of the day interesting to listeners," he contends  (Id. at 16–17.)  Plaintiff disagrees.  In her view, Defendant "actively trades on his experience as a counterterrorism law enforcement officer, a former special agent of the FBI, and a teller of 'uncomfortable truth.  (Dkt. # 1 at ¶ 13.)  Indeed, Plaintiff notes, the podcast's

introduction begins with a voiceover that states "'this program has no time for comforting lies.'" (Id.)  Therefore, any reasonable listener would "view his accusation as sincere and not exaggeration."  (Id.; see also Dkt. # 14 at 12–16.)

A statement is considered defamatory under Texas law if "a person of ordinary intelligence would interpret it in a way that tends to injure the subject's reputation and thereby expose the subject to public hatred, contempt, or ridicule, or financial injury, or to impeach the subject's honesty, integrity virtue, or reputation."  Patel v. Figliuzzi, No. 4:25-cv-02548, Dkt. No. 38, at *6 (S.D. Tex. Apr. 21, 2026) (citing TEX. CIV. PRAC. & REM CODE. ANN. § 73.001 and Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114-15 (Tex. 2000)).  For a defamation claim in Texas, "whether the words used 'are reasonably capable of a defamatory meaning' " is the threshold question.  Dallas Morning News, Inc. v. Tatum, 554 S.W.3d 614, 624 (Tex. 2018) (quoting Musser v. Smith Protective Servs., Inc., 723 S.W.2d 653, 655 (Tex. 1987)).  Determining whether statements are capable of a defamatory meaning is an objective, not subjective inquiry.  Id. (citing New Times, Inc. v. Isaacks, 146 S.W.3d 144, 157 (Tex. 2004)).  This objective inquiry is a question of law to be determined by the court.  See Isaacks, 146 S.W.3d at 157; Turner, 38 S.W.3d at 114.  If a statement is ambiguous, and thus it is not objectively reasonably capable of a defamatory meaning, then it is the responsibility of the jury to determine what the statement means.  Dallas

Morning News, 554 S.W.3d at 624 (citing Musser, 723 S.W.2d at 655).

Furthermore, "[i]t is well settled that the meaning of a publication, and thus

whether it is false and defamatory, depends on a reasonable person's perception of

the entirety of a publication and not merely on individual statements." In re

Lipsky, 460 S.W.3d at 594 (quoting Bentley, 94 S.W.3d at 579).

There are several types of statements that are not capable of a

defamatory meaning. In re Lipsky, 460 S.W.3d at 594. "The truth of a statement

is an absolute defense to a claim for defamation." Klentzman v. Brady, 312

S.W.3d 886, 898 (Tex. App. — Houston [1st Dist.] 2009) (citing Hurlbut v. Gulf

Atl. Life Ins. Co., 749 S.W.2d 762, 766 (Tex. 1987)). And a true accounting is not

actionable regardless of what someone may infer unless it creates a false and

defamatory impression by omitting or juxtaposing facts in a misleading way. Id.

Additionally, "'statements that are not verifiable as false' are not defamatory."

Dallas Morning News, 554 S.W.3d at 638 (citing Neely v. Wilson, 418 S.W.3d 52,

62 (Tex. 2013)). And "even when a statement is verifiable, it cannot give rise to

liability if 'the entire context in which it was made' discloses that it was not

intended to assert a fact." Id. (citing Bentley, 94 S.W.3d at 581). "A statement that

fails either test—verifiability or context—is called an opinion." Id.

In cases involving parody or satire, the test is "whether the publication

could be reasonably understood as describing actual facts." Isaacks, 146 S.W.3d

10

at 156–57.  The "reasonable reader" or "'person of ordinary intelligence'

employed in this analysis 'is a prototype of a person who exercises care and

prudence, but not omniscience, when evaluating allegedly defamatory

communications.'"  Figliuzzi, No. 4:25-cv-02548, Dkt. No. 38, at *7 (quoting

Isaacks, 146 S.W.3d at 157); see Isaacks, 146 S.W.3d at 157.  This reader "does

not represent the lowest common denominator, but reasonable intelligence and

learning . . . [and] can tell the difference between satire and sincerity."  Isaacks,

146 S.W.3d at 157 (internal citation omitted).  And because the inquiry is an

objective one, "the question is not whether some actual readers were mislead

[sic.], as they inevitably will be, but whether the hypothetical reasonable reader

could be."  Id.

In addition, "[s]tatements that would be perceived by the audience as

'rhetorical hyperbole' do not constitute defamation."  Figliuzzi, No. 4:25-cv-

02548, Dkt. No. 38, at *7 (quoting Coronado v. Freedom Commc'ns, Inc., No. 13-

13-00525-CV, 2015 WL 9434656, at *6–7 (Tex. App. — Corpus Christi –

Edinburg Sept. 30, 2015, no pet.)).  "'Rhetorical hyperbole' is a subset of opinion,

which Texas courts have 'defined as extravagant exaggeration that is employed for

rhetorical effect.'"  Id., at *6 (quoting Backes v. Misko, 486 S.W.3d 7, 26 (Tex.

App. — Dallas 2015, pet. denied)).  Because "[r]hetorical hyperbole is not subject

11

to objective verification . . . it is not provable as false and not actionable in a case against a media defendant."  Coronado, 2015 WL 9434656, at *3.

In this case, Defendant referred to Plaintiff[6] as a "honeypot" and stated that she is "a former Mossad agent."  (Dkts. ## 1 at ¶ 13; # 10-2 at 7.) Defendant argues that the statements at issue "clearly constituted imaginative expression, satire, humor, and rhetorical hyperbole" and are therefore not actionable.  (Dkt. # 10 at 16.)  The Court, however, does not agree.  First, Defendant's statements here are verifiably false.  Second, when viewed in context, the Court finds that these statements would reasonably be understood as describing actual facts, rather than "opinion masquerading as fact."  Dallas Morning News, 554 S.W.3d at 624.

In the episode at issue, Defendant begins by describing himself as a "real whistleblower" and former FBI agent who presents the "uncomfortable truth" during his podcast.  (Dkt, # 10-2 at 1).  As pleaded by Plaintiff, the

---

[6] Although Defendant does not refer to Plaintiff by name in his podcast, the remarks are clearly in reference to Plaintiff as Director Patel's girlfriend, and Defendant appears to concede this fact in his briefing.  (See Dkt. # 1 at ¶ 10; Dkt. # 10 at 1 ("Ms. Wilkins is attempting to use Mr. Seraphin's humorous, sarcastic, and hyperbolic reference to news stories *about Ms. Wilkins* and her boyfriend" (emphasis added))).  Regardless, Plaintiff has alleged in her Complaint that the statements were about her, which is sufficient at this stage.  (Dkt. # 1 at ¶ 11); cf. Busch v. Viacom Int'l, Inc., 477 F. Supp. 2d 764, 776 (N.D. Tex. 2007) (granting a motion to dismiss on a defamation claim because the plaintiff failed to allege that the challenged statements were about him).

12

introduction to the podcast also begins with a voiceover that says, "this program has no time for comforting lies."  (Dkt. # 1 at ¶ 13.)  In addition, preceding the statements about Plaintiff in his show, Defendant surveyed news reports of undercover and "honeypot" techniques used by the FBI in various investigations. (See Dkt. # 10 at 11; Dkt. # 10-2 at 6.)  Then, Defendant discussed Director Patel having his own "little honeypot issue that's been going on of late" and proceeded to talk about Plaintiff.  (Dkt. # 10-2 at 7.)  After these statements, Defendant continued his criticism of Director Patel by wading into "the Epstein situation," the FBI's New York Field Office, and the "New York Mafia" to "break it down for people so we have this real clear idea of . . . who's really running the FBI[.]"  (Id.) When viewed in this context, the Court finds that a reasonable viewer would take Defendant's statements as part and parcel of the show's stated aim of presenting "uncomfortable truths" and a continuance of the factual discussions immediately before and after the statements.  Cf. Isaacks, 146 S.W.3d at 157 (finding that an allegedly defamatory statement was unactionable satire where the article at issue contained "such a procession of improbable quotes and unlikely events that a reasonable reader could only conclude that the article was satirical"); Lilith Fund for Reprod. Equity v. Dickson, 662 S.W.3d 355, 367 (Tex. 2023) (noting that in a no-defamation case, "the language used clues the reader that [the defendant's] purpose is advocacy, not the dissemination of facts.").  Defendant's arguments to

13

the contrary ignore this context.  The Court therefore finds that the challenged

statements are capable of defamatory meaning.[7]  See Wilkins v. Schaffer, No.

9:25-cv-81334-DMM, Dkt. No. 10, at *5 (S.D. Fla. Feb. 4, 2026) (applying

Florida law to find that, given its context, a post suggesting Wilkins is a

"honeypot" and Mossad agent "trend[ed] towards assertion of fact rather than an

opinion).

II.      Requisite Degree of Fault

Next, Defendant asserts that Plaintiff's defamation claim fails because

she does not sufficiently allege the requisite degree of fault.  (Dkt. # 10 at 17.)  In

the context of a defamation claim, the requisite degree of fault turns on whether the

plaintiff is a public or private figure.  See McLemore, 978 S.W.2d at 571;

MediaOne, L.L.C. v. Henderson, 592 S.W.3d 933, 940 (Tex.App. — Tyler 2019,

pet. denied).  If the plaintiff is a private figure, he or she must only show that the

defendant acted with *negligence* regarding the truth of the statement; if the plaintiff

---

[7] The Court is also not persuaded by Defendant's citation to Patel v. Figliuzzi, No.
4:25-cv-02548, Dkt. No. 38, at *7 (S.D. Tex. Apr. 21, 2026).  (Dkt. # 16.)  There,
the court found that a statement that Director Patel has "been visible at nightclubs
far more than he has been on the seventh floor of the Hoover building" was mere
"rhetorical hyperbole."  Figliuzzi, No. 4:25-cv-02548, Dkt. No. 38, at *1, 7.
However, that statement is different in kind from the statement at issue here.  Id. at
*7 (explaining that by saying Director Patel spent "far more" time at nightclubs
than his office, the defendant delivered his answer 'in an exaggerated, provocative
and amusing way'").  When viewed in context, the Court does not agree with
Defendant that the statements here are mere "rhetorical hyperbole."

is a public figure, on the other hand, the plaintiff must show that the defendant

acted with *actual malice*.  McLemore, 978 S.W.2d at 571.  Defendant contends that

Plaintiff is a public figure and so must sufficiently plead actual malice.  (Dkt. # 10

at 17–19.)  Because she has failed to do so, Defendant argues, the Complaint

should be dismissed.  (Id. at 19–20.)

Here, the Court finds that Plaintiff has sufficiently pleaded actual

malice and so declines to rule on Plaintiff's status as a public or private figure at

this stage of the proceedings.  See Schaffer, No. 9:25-cv-81334-DMM, Dkt. No.

10, at *6 (declining to reach the question of whether Wilkins is a public or private

figure at the motion to dismiss stage because she had sufficiently alleged actual

malice); Berrios v. Cox, No. EP-23-CV-63-KC, 2024 WL 89453, at *3 (W.D. Tex.

Jan. 8, 2024), reconsideration denied, No. EP-23-CV-63-KC, 2024 WL 3223687

(W.D. Tex. Feb. 6, 2024) (not reaching the analysis of whether or not a plaintiff is a

public or private figure at the motion to dismiss stage because the plaintiff had

adequately pleaded the higher standard, actual malice); see also Trotter v. Jack

Anderson Enterprises, Inc., 818 F.2d 431, 433 (5th Cir. 1987) ("Defining a public

figure has been likened to trying to nail a jellyfish to the wall.").

Actual malice requires a statement made "'with knowledge that it is

false, or with reckless disregard of whether it is true.'"  Burbage v. Burbage, 447

S.W.3d 249, 254 (Tex. 2014) (quoting Hagler v. Proctor & Gamble Mfg. Co., 884

S.W.2d 771, 772 (Tex.1994) (per curiam)); MediaOne, 592 S.W.3d at 940; see

New York Times, Inc. v. Sullivan, 376 U.S. 254, 288 (1964).  Knowledge of

falsehood is "a relatively clear standard," while reckless disregard is a "subjective

standard that focuses on the conduct and state of mind of the defendant."  Bentley,

94 S.W.3d at 591 (internal quotations and alterations omitted).  "Reckless

disregard" "requires more than a departure from reasonably prudent conduct;" in

other words, mere negligence is insufficient.  Id. (internal quotations and citation

omitted).  As the Texas Supreme Court has explained:

> A lack of care or an injurious motive in making a statement is not alone
> proof of actual malice, but care and motive are factors to be considered. An
> understandable misinterpretation of ambiguous facts does not show actual
> malice, but inherently improbable assertions and statements made on
> information that is obviously dubious may show actual malice. A failure to
> investigate fully is not evidence of actual malice; a purposeful avoidance of
> the truth is.

Id. at 596.  When determining whether a plaintiff has met the actual malice

standard, courts must view the evidence in its entirety.  Id.  And, in this context,

the defendant's state of mind can, and indeed must usually, be proven by

circumstantial evidence.  Id.

In her Complaint, Plaintiff alleges that Defendant acted with actual

malice in making the allegedly defamatory statements.  (Dkt. # 1 at ¶ 23.)  She

asserts that Defendant "published his defamatory statements across numerous

outlets, knowing that they were false" and "entirely fabricated the story to

16

generate video engagement revenue and to indulge in his obvious animus against Dir. Patel and against Ms. Wilkins." (Id. at ¶ 21.) In support of these allegations, Plaintiff states that she and Defendant met in person approximately two years ago at a political event. (Id. at ¶ 14.)[8] Plaintiff alleges that, because of that meeting, which took place before Director Patel became the FBI Director, Defendant knew that Plaintiff was American, not Israeli, that she was not a Mossad agent, and that her relationship with Director Patel began long before he became Director. (Id. at ¶¶ 14, 23.) Plaintiff also alleges that Defendant had never once reached out to her and that she stated publicly prior to Defendant's statements that the allegations regarding her affiliation with Israel are false. (Id. at ¶ 23.) Based on this, Plaintiff contends that Defendant knew she was not part of any foreign intelligence agency, and instead "fabricated this accusation at the expense of [Plaintiff] to obtain personal profit, generating outrage to drive up his viewership." (Id. at ¶ 15.) This animus and "malicious intent," Plaintiff asserts, "is further emphasized by [Defendant's] desire to spread this lie 'real publicly.'" (Id.) Taking these well-pleaded allegations as true and viewing them in light most favorable to her, the Court finds that Plaintiff has sufficiently pleaded actual malice. The Court therefore **DENIES** Defendant's Motion to Dismiss.

---

[8] Although Defendant denies that this meeting ever occurred (Dkt. # 10 at 19), at the 12(b)(6) stage, the Court will view accept all well-pleaded factual allegations as true, construing them in the light most favorable to the plaintiff.

17

CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss. (Dkt. # 10.)

**IT IS SO ORDERED.**

**DATE:** Austin, Texas, May 22, 2026.

_____

David Alan Ezra
Senior United States District Judge